UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                               :

MARTIN KOTLER,              :

                      :

            **Plaintiff,**      :

                      :

         - against -         :

                      :

CHARMING SHOPPES INC., as     :
successor in interest, by merger,     :
acquisition or other corporate      :
transaction, to LANE BRYANT, INC.,  :
and THE LIMITED INC.,        :

                      :

         **Defendant.**     :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/12

### OPINION AND ORDER

11 Civ. 3296 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Martin Kotler brings this action against Charming Shoppes, Inc., as successor in interest, by merger, acquisition or other corporate transaction, to Lane Bryant Inc., and The Limited Inc. for federal benefits under section 1132 of the Employee Retirement Income Security Act[1] ("ERISA") and for promissory estoppel and fraud under New York law.  Charming Shoppes now moves to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  Because I

---

[1]      *See* 29 U.S.C. § 1001 *et seq.*

1

find each of Kotler's claims to be time barred, defendant's motion is granted.

## II.   BACKGROUND

Martin Kotler began working for Lane Bryant, a Texas corporation, in 1958.[2] The Limited, an Ohio corporation, began negotiations to acquire Lane Bryant in or about 1979.[3] The acquisition required Kotler's relocation to Texas.[4] Rather than relocate, Kotler expressed his intention to retire in 1979 to Lane Bryant's then-President, Raphael Malsin.[5] Malsin induced Kotler to remain with the company until the completion of the acquisition by assuring Kotler that doing so would enhance the pension benefits included in his compensation.[6] Kotler alleges these assurances were made frequently during end-of-the-year salary negotiations in 1979, 1980, and 1981.[7] Lane Bryant promised to provide these benefits in accordance with an annuity contract it maintained with a financial services entity.[8] Upon completion of the merger with The Limited in 1982, Kotler

---

[2]     *See* Amended Complaint ¶¶ 6, 12.

[3]     *See id.* at  ¶¶ 1, 6.

[4]     *See id.* at  ¶¶ 1, 29.

[5]     *See id.* at  ¶ 29.

[6]     *See id.*

[7]     *See id.* at ¶¶ 2, 32.

[8]     *See id.* at ¶ 32.

retired from Lane Bryant.[9]  At or around the same time, Lane Bryant provided the names and information of retired managerial employees with ten or more years of service to the financial services entity that handled its annuity contract for pension plans.[10]  Kotler's name was not on this list, although he had been a managerial employee for over ten years.[11]  He repeatedly inquired into the status of his benefits while The Limited owned Lane Bryant.[12]

In 2001, Lane Bryant's ownership changed again when Charming Shoppes, a Pennsylvania Corporation, purchased it from The Limited.[13]  Through the purchase, The Limited acquired an eight percent ownership interest in Charming Shoppes.[14]  In his continued inquiry into the status of his retirement benefits, Kotler learned of Charming Shoppes' acquisition in 2010.[15]  He called Charming Shoppes, learned John Hancock Financial Services handled the company's retirement plans, and was given the identifying annuity contract

---

[9]      *See id.* at ¶ 29.

[10]     *See id.* at ¶ 33.

[11]     *See id.* at ¶ 14.

[12]     *See id.* at ¶ 13.

[13]     *See id.* at ¶¶ 6, 9.

[14]     *See id.* at ¶ 11.

[15]     *See id.* at ¶ 14, 41-42.

number.[16]  On June 24, 2010, after several attempts, Kotler spoke to a John

Hancock employee who informed him that Charming Shoppes provided a list of

Lane Bryant managerial employees eligible for benefits, and that Kotler's name

and information was not included in this list.[17]  On August 16, 2011, Kotler filed

his complaint pro se in this Court naming Charming Shoppes as the sole defendant.

On November 2, 2011, Kotler filed his amended complaint, after having retained

counsel.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), the court "accept[s] all factual allegations in the complaint as

true, and draw[s] all reasonable inferences in the plaintiff's favor."[18]  The court

evaluates the sufficiency of the complaint under the "two-pronged approach"

advocated by the Supreme Court in *Ashcroft v. Iqbal*.[19]  *First*, a court "'can choose

to begin by identifying pleadings that, because they are no more than conclusions,

---

[16]      *See id.* at ¶ 43.

[17]      *See id.* at ¶¶ 44-45.

[18]      *Wilson v. Merrill Lynch & Co.*, — F.3d —, 2011 WL 5515958, at *6
(2d Cir. Nov. 14, 2011) (quotation marks omitted).

[19]      556 U.S. —, 129 S.Ct. 1937, 1950 (2009).

are not entitled to the assumption of truth.'"[20]  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice" to

withstand a motion to dismiss.[21]  *Second*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[22]  To survive a Rule 12(b)(6)

motion to dismiss, the allegations in the complaint must meet a standard of

"plausibility."[23]  A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."[24]  Plausibility "is not akin to a probability

requirement;" rather, plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."[25]

        "In considering a motion to dismiss for failure to state a claim

---

[20]        *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[21]        *Iqbal*, 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[22]        *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[23]        *Twombly*, 550 U.S. at 564.

[24]        *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[25]        *Id.* (quotation marks omitted).

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[26]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[27]

## IV.    APPLICABLE LAW

### A.    ERISA Time Bar

ERISA does not specify a statute of limitations period for section 1132 actions, "[t]herefore, the applicable limitations period is 'that specified in the most nearly analogous state limitations statute.'"[28]  In New York, section 1132 actions are most analogous to the six-year limitations period prescribed for contract actions.[29]  Although state law determines the limitations period, federal common

---

[26]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[27]    *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[28]    *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)).

[29]    *See id.* (citations omitted).

law dictates when the limitation period begins or when the cause of action

accrues.[30]  The federal common law "discovery rule" states that "a plaintiff's cause

of action accrues when he discovers, or with due diligence should have discovered,

the injury that is the basis of the litigation."[31]  Generally ERISA claims begin to

accrue "upon a clear repudiation that is known, or should be known, to the plaintiff

– regardless of whether the plaintiff has filed a formal application for benefits."[32]

### B.    Time Bar for State Law Claims

Under New York law, the statute of limitations for promissory

estoppel claims is six years.[33]  The limitations period begins to run when the

promise is broken.[34]

Actions alleging fraud differ because they "must be commenced either

---

[30]    *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2009).

[31]    *Id*. (quoting *Union Pacific R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998)).

[32]    *Carey v. International Broth. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 49 (2d Cir. 1999).  *Accord Guilbert*, 480 F.3d at 149.

[33]    *See* N.Y. Civ. Prac. L. & R. ("CPLR") § 213.  *See also Schmidt v. McKay*, 555 F.2d 30, 35 (2d Cir. 1977) ("Although there is no express provision for a statute of limitations in promissory estoppel cases . . . where no limitations period is specifically prescribed, an action must be commenced within six years.").

[34]    *See Schmidt*, 555 F.2d at 36.  *See also Abdrabo v. State of N.Y. Worker Compensation Bd.*, No. 03 Civ. 7690, 2005 WL 1278539, at *2 (S.D.N.Y. May 27, 2005).

within six years from the commission of the fraud or within two years from the date that the fraud was discovered, or could reasonably have been discovered, whichever is later."[35]  The plaintiff must show "that the fraud could not have been discovered before the two-year period prior to the commencement of the action."[36] The standard for discovery of fraud is objective not subjective, " '[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.' "[37]

## V.    DISCUSSION

### A.    ERISA Time Bar

Kotler's ERISA claim accrued as soon as he realized or should have realized that he would not receive the promised pension benefits.  Kotler's realization that he was not receiving benefits to which he was entitled occurred in advance of the filing of this action twenty-nine years after his retirement.  He repeatedly inquired into the status of his pension plan while The Limited controlled

---

[35]    *Guilbert*, 480 F.3d at 147 (citing CPLR §§ 203(g), 213(8)).

[36]    *See id.* (citations omitted).

[37]    *See Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416 (1895)).

Lane Bryant.  Even if Kotler felt that he was being "blockaded"[38] in his quest for information, he should have known that the offer of pension benefits had been repudiated by The Limited.  In fact, he should have seen the "blockading" as evidence of repudiation.  Although the exact date of accrual cannot be determined due to the procedural posture of this motion, it surely occurred long before 2005.

### B.    Time Bar for State Law Claims

Kotler claims he was promised pension benefits as an inducement for his continued service to Lane Bryant.  He received no such benefits upon his 1982 retirement and has not since.  The promise, therefore, was broken soon after his retirement.  Deferred pension benefits are not at issue here, and Kotler's continued inquiry into the status of his benefits indicates he expected the benefits sometime during The Limited's control of Lane Bryant, which ended in 2001.  The claim for promissory estoppel is therefore time barred by the six-year limitations period.

Kotler argues that fraud prevented his discovery of the denied benefits until 2010.[39]  However, he could reasonably have made this discovery prior to 2009.  Charming Shoppes acquired Lane Bryant in 2001.  When Kotler learned of this acquisition nine years later, he easily obtained relevant information about

---

[38]    Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 5.

[39]    *See id*. at 4.

Charming Shoppes' annuity contract with John Hancock in a matter of months.  If

Kotler had diligently executed his duty of inquiry at any time following Charming

Shoppes' acquisition he would have been able to discover that his name was not

included on the list of Lane Bryant retirees as early as 2001. On similar facts[40] the

Second Circuit concluded that the plaintiff should have discovered fraud based on

the plaintiff's years of service, defendants' mere oral assurances of a pension, and

the lack of formal documentation even after repeated requests.[41]  Similarly, based

on his extended employment, mere verbal guarantees of a pension plan, and The

Limited's refusal to provide information, Koetler should have suspected fraud far

earlier than 2009.  Koetler's fraud claim is untimely.

### C.    Leave to Replead

Whether to permit a plaintiff to amend his complaint is a matter

committed to a court's "sound discretion."[42]  Rule 15(a) provides that leave to

amend a complaint "shall be freely given when justice so requires."[43]  Leave to

---

[40]    *See Guilbert*, 418 F.3d at 147.  Guilbert alleged he joined defendants' company because defendants promised pension benefits. *See id.*  Promises made specifying the amount of benefits were made nine years prior to the filing of Guilbert's actions, but Guilbert claimed defendants continuously assured him of his entitlement to pension benefits. *See id.*

[41]    *See id.* at 147-48.

[42]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[43]    Fed. R. Civ. P. 15(a).

replead should be denied, however, where the proposed amendment would be futile.[44] Here, leave to replead would be futile because Kotler's claims are time barred and an amended complaint would be unable to cure that deficiency. Accordingly, leave to replead is denied.

## VI.  CONCLUSION

For the foregoing reasons, defendant's motion is granted.  The Clerk of the Court is directed to close this motion [docket # 21] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              January 31, 2012

---

[44]      See *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002).

**-Appearances-**

**For Plaintiff:**

Stephen G. Dickerman, Esq.
Koven & Krausz
358 Fifth Avenue, Suite 301
New York, NY 10001
(347) 462-9904

**For Defendant:**

Jonathan Shapiro, Esq.
Fisher & Phillips LLP
400 Congress Street, 4th Floor
P.O. Box 7250
Portland, ME 04112-7250
(207) 774-6001